## STATE *v*. GEORGE F. KIBLING.

*Constitutional law. Prohibitory liquor law. Re-enactment. Evidence. Accomplice. No. 42, Acts of 1888.*

1. The same law may be constitutional as to one subject and unconstitutional as to another.

2. The prohibitory liquor law, although unconstitutional as a regulation of commerce as to certain sales, was constitutional as to other sales, not within that inhibition of the Constitution of the United States, before its re-enactment, November 26, 1890.

3. The effect of that re-enacting statute, No. 40, Acts of 1890, was not to repeal the prohibitory law, but rather to continue it in force, and a conviction may be had under that law since the passage of the re-enacting statute for an offence committed before.

4. The respondent being charged with liquor selling, it was not error to permit a truckman to describe the barrels which he drew from the freight depot to the respondent's place of business, where the alleged sales were made.

5. It is not the law of Vermont that a respondent cannot be legally convicted upon the uncorroborated testimony of an accomplice ; and if it were, the evidence of the alleged accomplice in this case was corroborated, and the weight to be given it properly explained to the jury.

6. If the thing sold was intoxicating liquor, it is of no conseqence under what name the respondent sold it.

7. No. 42, Acts of 1888, in changing the penalty for the illegal sale of intoxicating liquor, required the jury to say by their verdict whether the sale was before or after the passage of that act. *Held*, that in a prosecution under that act, where the evidence did not tend to show any sale prior to its passage, there was no error in neglecting to submit that question to the jury.

Information charging the respondent with liquor selling. Plea, not guilty. Trial by jury at the December term, 1890,

State *v.* Kibling.

Thompson, J., presiding. Verdict guilty, and judgment upon verdict. Exceptions by the respondent.

The respondent excepted to proof of sales prior to Nov. 26, 1890, first, because under the decision of the Supreme Court of the United States, the prohibitory liquor law previous to its re-enactment as of that date was unconstitutional as a regulation of commerce; second, because whether constitutional or not, the re-enacting statute repealed the old law so that no conviction could be had for an offence committed under it. There was no evidence tending to show that the liquor sold was in the original package.

No. 40, Acts of 1890, the re-enacting statute, was as follows:

" WHEREAS, doubts have been suggested as to the validity of the statutes of this State heretofore enacted relating to intoxicating liquors or liquids, as applied to such liquors or liquids when brought into the State under certain circumstances; and

WHEREAS, it is expedient that the due administration of justice be not hindered, delayed or thwarted by such doubts; therefore,

*It is hereby enacted by the General Assembly of the State of Vermont:*

Section 1. That the statutes of this State heretofore enacted and which have not been repealed, and each and every part of the same, relating to the subject of intoxicating liquors or liquids, or offences or proceedings having relation to any such liquors or liquids, be and the same are hereby re-enacted, and are hereby declared to be of and to have full force and effect to every intent and purpose, in the same manner and with the same effect as if each and every such statute were herein repeated and set forth in detail.

Sec. 2. Nothing in the preceding section shall be taken or deemed to affect in any manner any offence, proceeding, verdict or judgment which has been committed or taken place before the passage of this act; and every such offence, proceeding, verdict and judgment, shall be prosecuted, proceeded with, tried, determined and executed, respectively, in the same manner, and with the same effect as if this act had not been passed.

Sec. 3. This act shall take effect from its passage.

Approved, Nov. 26, 1890."

The evidence of the State tended to show that the respondent had sold whiskey and lager beer at his restaurant at Norwich, and that it was brought there in barrels and half-barrels. In this connection one Gouillette, who had drawn freight of this kind from the freight depot at White River Junction to the defendant's place of business was permitted to answer this question:

"Describe the barrels which you rolled there onto the platform."

It did not appear from the exceptions what the answer was.

One Clifford testified that as the clerk of the respondent he had made certain sales.

The respondent's first request to charge was as follows:

"The respondent cannot be convicted óf any offences on the uncorroborated testimony of Clifford. He was an accomplice of the respondent in the violation of the law with which he stands charged, and his statements should be received with great caution, he having turned State's evidence, with the understanding with the State's attorney that he should be favorably dealt with for so doing."

Upon the subject of this request the court charged:

"Some comment has been made upon the testimony of the witness Oscar Clifford, and it has been argued to you that he is an accomplice of the defendant, and that the testimony of an accomplice must be received and weighed by a jury with great caution and care. The court instruct you that Oscar Clifford is not within the meaning of the law an accomplice. The offence for which the respondent is prosecuted is a misdemeanor, and there are no accomplices in such offences. All parties participating therein are principals; and if Mr. Clifford bears any relation to the offence charged, that relation is that of principal, that is, a person who must answer on his own account for the offence which he has committed, and not because he has aided or abetted some other person in the commission of an offence. By the laws of this State in prosecutions of this kind no person other than the respondent is excused from testifying because his testimony may criminate or tend to criminate himself. The law further provides that such testimony shall not be used against the person giving it in any proceeding against him, civil or criminal, excepting in a prosecution for perjury committed in giving such testimony. So that, under the law, when Mr. Clifford was put upon the stand,

State *v.* Kibling.

he had no other election save to testify, or be committed by the court, until he should purge himself from contempt for not testifying, did he so refuse. In weighing his testimony, you are to take into consideration this law which compelled him to testify, as well as the circumstance that he was in the employ of the respondent, and all the other circumstances, and say from them all, what weight you will give to his testimony. It is all a question of fact for you."

After judgment and before sentence the respondent filed the following motion in arrest, which was overruled:

"And now, after verdict and before sentence, comes the said George F. Kibling, and prays that judgment herein may be arrested and for cause says, that the jury returned a general verdict of guilty of 715 separate and distinct offences, and did not say by their verdict what violations were before and what after the passage and taking effect of Act No. 42 of the Session Laws of 1888, entitled "an act in amendment of sections three thousand eight hundred and two, and three thousand eight hundred and three of the Revised Laws," as required by the provisions of said act, and said jury did not designate what violations were before and what after the passage of Act No. 40 of the Session Laws of 1890, entitled "an act to prevent delays and to expedite proceedings in liquor cases; and for other manifest defects in the record aforesaid appearing."

*Norman Paul,* for the respondent.

*Leisey* v. *Hardin,* 135 U. S. 100, decided that a prohibitory law like ours was unconstitutional as a regulation of commerce, so far as sales in the original package were concerned.

The prohibitory law of Vermont has but one object and is indivisible in its parts. It must stand or fall as an entirety. Being unconstitutional in one respect it was unconstitutional altogether.

Cool. Con. Lim. 216; *Garrard County Court* v. *Navigation Company,* 10 Am. Law Reg. 160; *Warren et al.* v. *Mayor and Aldermen of Charleston,* 2 Gray 99; *Hannibal & St. Joseph R. R. Co.* v. *John F. Husen,* 17 Am. Law Reg. 164; *Welton* v. *State of Missouri,* 1 Otto 275; *Henderson* v. *Mayor of New*

---

---

*York,* 2 Otto 259 ; *Chy Lung* v. *Freeman,* 2 Otto 375 ; *Brown et al.* v. *State of Maryland,* 12 Wheat. 419 ; *Bowman et al.* v. *Chicago & N. W. R. R. Co.,* 29 Am. Law Reg. 824.

The act of Congress known as the Wilson bill, gave the States power to re-enact their prohibitory laws; but it did not purport to and could not give those laws vitality previous to such re-enactment. Hence our law was of no force previous to the re-enacting statute approved Nov. 26, 1890.

*W. W. Stickney,* State's attorney, for the State.

The testimony of the truckman was properly admitted. It was circumstantial evidence. 2 Whar. Crim. Law, s. 2453 ; *Com.* v. *Davenport,* 2 Allen 299 ; *Com.* v. *Van Stone,* 97 Mass. 54.

Again the exceptions do not state what the answer was, and it must affirmatively appear that the respondent was injured or the judgment will not be reversed. *Hobart* v. *Plymouth,* 100 Mass. 159 ; *Kershaw* v. *Wright,* 115 Mass. 361.

The charge of the court as to the testimony of Clifford was correct. Clifford was not an accomplice for in misdemeanors there are no accessories. 4 Bl. Com. 36 ; *Com.* v. *Gannett,* 1 Allen 7 ; *United States* v. *Mills,* 7 Pet. 138.

And if he was the jury might convict upon his testimony alone. *State* v. *Potter,* 42 Vt. 495 : *State* v. *Dana,* 59 Vt. 614.

No. 40, Acts of 1890, did not repeal the law which it re-enacted. *Commonwealth* v. *Edwards,* 4 Gray 1.

It did not appear that any of the sales were of intoxicating liquor in the original package. Hence *Leisey* v. *Hardin,* has no application. *Bowman* v. *Railroad Co.,* 125 U. S. 465 ; *Leisey* v. *Hardin,* 135 U. S. 100 ; *State* v. *Prescott,* 27 Vt. 194; *Lincoln* v. *Smith,* 27 Vt. 328 ; *Gill* v. *Parker,* 31 Vt. 610 ; *Bartemeyer* v. *Iowa,* 18 Wall. 129 ; *Beer Co.* v. *Massachusetts,* 97 U. S. 25 ; *Foster* v. *Kansas,* 112 U. S. 201 ; *Mugler* v. *Kansas,* 123 U. S. 623.

State *v.* Kibling.

Judgment should not have been arrested because the jury did not find what offences were committed before and what after the passage of No. 42, Acts of 1881. There was no evidence of any offences before that statute. The reason for the requirement having failed the requirement would fail.

The opinion of the court was delivered by

ROSS, Ch J. 1. The counsel for the respondent contends that there was error in admitting testimony tending to show any offences committed prior to Nov. 26, 1890, when the Legislature re-enacted the law regulating the manufacture and sale of intoxicating liquors, and in convicting the respondent for any offences committed prior to that date. He bases this contention upon the claim that under the decision of *Leisey et al.* v. *Hardin,* 135 U. S. 100, the statutes of the State relating to this subject were unconstitutional and void. He does not contend that there was any evidence in the case tending to show that any of the liquor sold by the respondent, for which convictions were had, came from without the State to the respondent, or was still in, and sold by him, in the original packages, if it did come to him from without the State, so that it was within the interstate commerce provision of the Constitution of the United States. But he contends that the statute of the State prohibiting the sale of intoxicating liquors is indivisible; that there are no separate or distinct sections or clauses, independent of each other, so that one part can be sustained and the other excluded, but all of its provisions are connected in subject matter, depending on each other and operating together for the same purpose; that the framers of the law had but one object in view, that of suppressing the liquor traffic; that they have placed all liquors whether brought into the State in original packages or not on one common ground. It must be conceded that this contention is true so far as this law relates to liquors which would fall within the interstate commerce provision of the Constitution of the United

41

States.   Until the announcement of the decision in *Leisey et al.*
v. *Hardin*, it had been quite generally supposed that that clause
of the Federal Constitution did not prohibit the exercise of police
powers by a state.   But under this decision, before the passage of
the Wilson bill, so-called, by Congress, the statutes of the state
on this subject were unconstitutional, when applied to sales of
intoxicating liquors within the scope of that decision.   They
were also constitutional in all other respects, and when applied to
all other sales of intoxicating liquors made in violation of its pro-
visions in this state.   The evidence brought all the offences by
the respondent within the constitutional operation of the law.
The case, on its facts, does not involve the question of unconsti-
tutionality, within the decision of *Leisey et al.* v. *Hardin.*   The
law, untouched by that decision, applies without doubt or diffi-
culty, to every offence found against the respondent.   When
such is the case the law is not wholly unconstitutional, but only
so when the facts of the case bring it within the operation of
the Federal Constitutional inhibition.   There is no objection to
its enforcement whenever in its application it is constitutional.
The authorities cited by the respondent's counsel · clearly mark
this distinction.   In *Bank of Hamilton* v. *Dudley*, 2 Pet. 492,
Marshall, Ch. J., says :   "If any part of the act be unconstitu-
tional, the provisions of that part may be disregarded, while full
effect will be given to such as are not  repugnant to the constitu-
tion."   Says Miller, J., in *Eilenbecker* v. *District Court of
Plymouth, Iowa*, 134 U. S. 31 (33 L. C. 801) "It is the well set-
tled doctrine of this court that a part of a statute may be void,
and the remainder may be valid."

Hardin, J., in *Garrard Co. Ct.* v. *Navigation Co.*, 10 Am.
L. Reg. 160, expresses the same idea in this language:

"But while it is a rule of law that if a statute attempts to
accomplish two or more objects, and is void as to one, it may
still be valid as to the others ; yet if its purpose is to accomplish
a single object only, and some of its provisions are void, the

whole must fail unless sufficient remains to effect the object without the aid of the invalid portion." Under *Leisey et al.* v. *Hardin,* the statute, in terms, covered sales that might fall within the inhibition of the interstate commerce clause of the Constitution of the United States. It also covered a much larger class of offences, to which this inhibition did not apply. It could be fully operative to this latter class of offences; and it was so framed that its provisions were applicable. On the underlying principle of the decisions cited, it was not void when invoked against this class of offences. Hence this contention cannot be sustained. The facts of the case do not involve the consideration of the constitutionality of this law, when in conflict with the interstate commerce provision of the constitution of the United Strtes, and it is so framed as to be applicable and operative against the class of offences charged and proved against the respondent.

*State* v. *Wade,* heard at the last general term, involved the same question, and the decision therein covers the point here decided. *Bowman* v. *Railway Co.,* 125 U. S. 465; *Mugler* v. *Kansas,* 123 U. S. 623; *Bartemeyer* v. *Iowa,* 18 Wall. 129; *Beer Co.* v. *Massachusetts,* 97 U. S. 33; *Foster* v. *Kansas,* 112 U. S. 201.

2. The re-enactment of this law by the Legislature at its session in 1890 was a precautionary measure, rendered necessary, if necessary at all, by the decision in *Leisey et al.* v. *Hardin,* and was passed to make it sure that it was applicable and operative, under the Wilson bill, to that class of offences in regard to which that decision might render it void. It did not change or modify any of the provisions of the law. It simply declared that the law was re-enacted and to remain in force, as to the offences found against the respondent the same as it was before. There was nothing in the act re-enacting it, repugnant to or inconsistent with the provisions of the law as they had theretofore existed, nor was anything thereby validated, so far as it related to

the offences found against the respondent, which was invalid before. It neither added to nor took away anything from the existing law so far as applicable to this case, but declared the law to exist as it had existed. As said in *Kelsey* v. *Kendall*, 48 Vt. 24, " The portion of an amended statute which is merely copied without change, is not to be considered as repealed and again enacted, but to have been the law." The holding on these two points disposes also of the respondent's exceptions relating to his second request to charge.

3. There was no reversible error in allowing Gouillette to describe the barrels which he delivered to the respondent, at his place of business where the claimed sales were made. If the answer described them as whiskey or lager beer barrels, it would render the commission of the claimed offences more probable, because it would tend to show he had the means at hand with which to commit them. If it showed them to be of a different character, it would either tend to show that the respondent was not guilty of the charges, or be immaterial. The respondent could have suffered no harm from the answer, if it did not tend to establish the charges against him.

4. The respondent's first request was not sound law, and no error arose from a refusal to comply with it. It assumes that a conviction could not be legally had on the uncorroborated testimony of Clifford. Such is not the law of this State, though Clifford were the accomplice of the respondent. *State* v. *Potter*, 42 Vt. 495 ; *State* v. *Dana*, 59 Vt. 614. Whether the court should advise the jury not to convict on the uncorroborated testimony of an accomplice, is a question of practice, proper to be complied with, but not a question of law, from which error arises. Clifford was sharply corroborated. The charge in reference to this witness's relation to the respondent, and the offences with which he was charged, correctly stated the law bearing upon such relations, and told the jury to weigh his testimony, taking into consideration all the circumstances connecting him with the

respondent. This charge withdrew no evidence nor circumstance from the consideration of the jury, but called their minds specifically to *all* the circumstances bearing upon his testimony. They were told that they alone were the judges of the weight to be given his testimony. There was no error in the charge on this subject.

5. We discover no error in the charge upon the subject, whether the liquid sold by the respondent under the name of "pop beer" or "home made beer" was lager beer. The jury were told that they were not to be governed by the name by which it was called, but by what it was in fact; and that to convict, they were to find it established beyond a reasonable doubt to have been lager beer that he sold.

6. The respondent's motion, in arrest of judgment and sentence, cannot be sustained. It appears to have been filed after judgment on the verdict was entered. But if seasonably filed, it was addressed only to facts which appeared upon the record. The information and specifications, taken together, confined the State in its proof to offences committed in his restaurant and dwelling, in Norwich, within two years prior to Dec. 23, 1890. All the proof was confined to offences committed in these premises. The respondent did not move there until October, 1889. Although the court, in the discussion which arose in regard to some of the interrogatories propounded to witnesses, intimated that the State could introduce proof of offences committed during three years prior to filing the information, the State's attorney only asked to be allowed to introduce proof going back to Jan. 1, 1889, and the court charged the jury that they were confined within that time. Hence, if the motion in arrest could reach the question argued, neither the proof nor charge of the court allowed the jury to convict for any offences committed prior to the time when Act No. 42 of 1888 took effect. Hence that act had no relevancy to the verdict which the jury legally could render in the case. There was no occasion for the court

State *v.* Kibling.

to call upon the jury to declare, by their verdict, what offences were committed before and what after that act became opera-. tive. To have done so would have implied that there was evidence in the case from which the jury might legally find that the respondent committed offences prior to the time when that act took effect. Of a charge carrying such an implication, the respondent might well have complained. That act so far as it requires a special verdict from the jury, is by its scope applicable only to cases where the evidence has a legal tendency to show offences committed both before and after the act took effect. There is no view in which the motion in arrest can be sustained. The respondent has not relied upon any of his other exceptions.

*Judgment that the respondent takes nothing by his exceptions.*